WILL OF JACOBSON : CHRISTOFFERSON, Special Administrator, and others, Appellants, vs. JACOBSON and another, Respondents.

*December 10, 1936—January 12, 1937.*

For the appellants there were briefs by *Browne & Browne,* attorneys, and *Edward J. Hart* of counsel and guardian *ad litem,* all of Waupaca, and oral argument by *Mr. Edward E. Browne, Mr. Tom A. Browne,* and *Mr. Hart.*

*Lloyd D. Smith* of Waupaca, for the respondents.

FOWLER, J.    Christopher Jacobson died January 11, 1936, leaving a will which the executors named therein petitioned the court to admit to probate.    Joyce Ferguson, a daughter, and Marion R. Jacobson, a son, the only heirs of the decedent, objected on the grounds that the testator was mentally incompetent at the time of its execution, and that it was not duly executed.    Upon hearing, the county court found that the will was properly executed, but found that the testator was not mentally competent to make and execute a will at the date of its execution, May 15, 1935.    There had been a prior will, executed on August 28, 1934.    The former will contained small bequests to Mr. and Mrs. Fredrickson, with whom the testator was rooming and boarding at the time of its execution.    In May, 1935, the Fredricksons refused to keep the testator any longer.    He resented this, and as a result executed the second will in which he omitted the bequests to the Fredricksons.    He went himself to the office of the county judge where the first will was on deposit and withdrew it on May 13th.    Two days later he took it to the scrivener and

told him to copy the first will except the paragraph containing the bequests to the Fredricksons. The scrivener did this, and the will was properly signed and witnessed.

There is no direct testimony whatever that the testator was mentally incompetent at the immediate time the second will was executed. The scrivener who witnessed the will and his partner who was the other subscribing witness both testified positively that he was then competent, and their testimony as to his statements and conversations during the hour or hour and a half he was in their office strongly corroborate their opinions. They had both known the testator for many years and had previously done considerable business for him in connection with his property. The testimony is clear and undisputed that at the time he made the will he knew all about his property; that he then had his children in mind; and that he had quite recently had business transactions of importance relating to government loans on land upon which he held mortgages that were in process of foreclosure and showed understanding and business acumen in these transactions. For years prior to May 29th he was treasurer of a cemetery association, and on that day, which was fifteen days after the will was executed, he turned over to his successor in the office of the county judge funds to the amount of $1,657.44. His accounts were correct, and he had with him the correct amount of money which with a bond made up the proper amount. He brought the money alone to the county judge's office. He then appeared of sound mind. From this evidence, and in view of all the other evidence in the case, it seems clear to us that at the time the last will was executed the testator was competent. We realize that the finding of the county judge should not be overturned unless it is against the great weight and clear preponderance of the evidence. Had the county judge in making his finding of incompetence not expressed the opinion that the testator was "obsessed" with a "delusion"

that affected his disposition of his property we might not feel justified in reversing his decision. But what the county judge considered a "delusion" was plainly not such. The findings in this respect are that at the time of making the first will the testator "was suffering from a delusion and obsession in regard to any interest which his former wife, Lydia Jacobson, might have or obtain in his estate after his death and that such delusion and obsession materially influenced the provisions" of said will, and that this "delusion and obsession . . . continued from the time of the making of the said first will to the time of his death." The facts in this regard are that in 1914 the testator's wife had obtained a divorce from him, and by the judgment was awarded the custody of the two children of the parties, $2,500 as final division of property between the parties, and $2,500 for the support of the children until they became of age, which payments the testator had made. The former wife was still living. It is plain that the testator did not want his former wife to receive any more of his property, and by his will he effectually provided that she could not do so, either directly or indirectly, through gifts from her children. The provision so providing is as follows: "I give and bequeath to my two children, Joyce Ferguson and Marian Jacobson, the income from my said property during their lifetimes, said bequests not to take effect until the death of my said divorced wife, Lydia Jacobson, who is to receive no part of my property, having already received all the property from me that I desire to give her." This indicates that the testator may have had the idea that his former wife would take part of his property under the law if he did not provide otherwise by his will. If so, this was only an erroneous view of the law. Erroneous views of the law are not "delusions" such as to void wills. A "delusion" such as to void a will must be an "insane delusion" (see *Will of Lundquist*, 205 Wis. 667, 669, 238

N. W. 861), and there is no hint here of "insanity." The testator at the times of the making of the wills involved, as the evidence clearly shows and as the court found, was and for several years had been afflicted with diabetes and Bright's disease, and said diseases "caused at times mental failing and weakness and . . . [the testator] because of his age [seventy-four years] and of such diseases was at times mentally incompetent to be capable of .making a will while at other times he might be mentally competent." Of course, a person so afflicted may be so incompetent when he attempts to make a will, but he cannot be presumed to be so, and all the evidence of mental condition at the immediate time of making the will in suit is that he was competent. As the conclusion of the trial court was influenced by an erroneous view of the "delusions and obsessions" that void wills we cannot give it the weight that it would otherwise have. It is true that the county court found that the testator was not mentally competent on the day he made his first will, and that there is evidence lending support to that conclusion. This evidence is to the effect that the attorney who drew the will visited the testator at his boarding place, where he was confined to the house, with two other drafts of the will before the testator was satisfied with it and that the testator sent for Mr. Fredrickson several times on that day and part of the times when he came did not know what he wanted of him. The wording of the wills in referring to his children is relied on as showing incompetency at times both wills were signed and doubtless bears somewhat on the point. The children are mentioned by name as above quoted, but the boy's name is spelled Marian, in the feminine, instead of Marion, the masculine. Next following the quotation above given, the will reads: "and at the death of either of my daughters, the one-half of my said property shall be equally divided between their children, share and share alike, so that the children of Joyce

Ferguson receive one-half of my said estate and the children of Marian Jacobson receive one-half of the estate, the corpus of said estate to be divided between and vest in my said grandchildren within twenty-one (21) years from the death of their said mothers." This language no doubt resulted from the scrivener of the first will inferring that Marion was a daughter instead of a son, and it would seem that the testator should have noticed the mistake of the scrivener at the signing of both wills. However, it was not noticed. The scrivener of the second will, whose mental competency is not attacked, did not notice the mistake, although the testator told him at the time that he had two children, a boy and a girl. The testator and the scrivener of the second will "talked over thoroughly" that by the will "the property should vest in his grandchildren within twenty-one years after the death of their mothers;" "that was his [testator's] main point." The daughter had children. The son had none. Apparently it was not noticed that the word "daughters" was used instead of children and "mothers" instead of parents, because the minds of the testator and the scrivener were centered on the "main point."

The above does not state in detail all the evidence, but it is sufficient to indicate both the reasons of the trial court for its decision and our reasons for reversing it. We have carefully read and considered all the evidence. No useful purpose would be served by further statement or discussion.

*By the Court.*—The judgment of the county court is reversed, and the record remanded with direction to admit the will of May 15, 1935, to probate.